# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CHERYL & CO.,**

  **Plaintiff,**

 v.            Civil Action 2:18-cv-1485
                Chief Judge Edmund A. Sargus, Jr.
                Magistrate Judge Jolson

**CHERYL L. KRUEGER, et al.,**

  **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Protective Order (the "Motion") (Doc. 31). For the following reasons, Attachment 1 shall be the controlling Protective Order in this case.

## I. BACKGROUND

Plaintiff Cheryl & Co. is a leading seller of cookies and other baked goods founded by Defendant Cheryl L. Krueger. Plaintiff asserts that Defendant Krueger has formed a new company (Defendant CKE) to compete against Plaintiffs, and hired Plaintiff's former employees (Defendants Adell, Coley-Tonti, Dalton and Allwein) to assist with CKE's alleged competing operations. (Doc. 1). Plaintiff alleges that Defendants have violated various non-disclosure, non-compete, and non-solicitation agreements, and that Defendants are unfairly competing with Plaintiff by violating Plaintiff's asserted trade secret and trade dress rights. (*Id.*). More specifically, Plaintiff alleges ten counts, including misappropriation of trade secrets in violation of federal and state law, breach of contract, tortious interference with contractual and business relations, civil conspiracy, unfair competition, violation of the Ohio Deceptive Trade Practices

Act, and trade dress infringement and false designation of origin under the Lanham Act. (*See generally id.*).

The parties were unable to agree on a stipulated protective order, leading Plaintiff to file the Motion on February 14, 2019. (Doc. 31). One week later, the Court held the first preliminary pretrial conference and directed the parties to meet and confer to attempt to resolve their differences by February 25, 2019. (Doc. 34). Although some progress was made, the parties were unable to resolve their differences. The Motion has been fully briefed (Docs. 31, 35, 36), and is therefore ripe for resolution.

## II. STANDARD

In the exercise of its discretion, the Court may, upon a showing of good cause, issue a Protective Order limiting or restricting discovery. Fed. R. Civ. P. 26(c). Specifically, the Court may issue an order "requiring that a trade secret or other confidential . . . commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). A protective order with an Attorneys' Eyes Only ("AEO") designation serves to limit disclosure of trade secret information to the opposing party's attorneys and expert witnesses only. *See Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-cv-0993, 2012 U.S. Dist. LEXIS 168577, at *10 (S.D. Ohio Nov. 28, 2012).

"The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citations omitted). To show good cause, the movant "must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id*. The party seeking an AEO Protective Order must identify with sufficient particularity the harm it will suffer. *Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 535 (S.D. Ohio 2014). "In the business context, such a showing

requires 'specific demonstrations of fact, supported where possible by affidavits and concrete examples.'" *Id*. (quoting *Penn, LLC*, 2012 U.S. Dist. LEXIS 168577, at *10).

An "AEO designation can be justified upon a specific factual showing that 'especially sensitive information is at issue or the information is to be provided to a competitor.'" *Id.* (quoting *United States ex rel. Daugherty v. Bostwick Labs*., No. 1:08-cv-354, 2013 U.S. Dist. LEXIS 89683, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013) (further quotations omitted)). "Courts have routinely recognized that when parties compete in the same industry, an [AEO] designation strikes the appropriate balance between a litigant's right to relevant discoverable information and the legitimate concerns surrounding disclosure of highly confidential sensitive information to a direct competitor." *Daugherty*, 2013 U.S. Dist. LEXIS 89683, at *31 (citations omitted). Courts often examine the following factors in evaluating the need to protect sensitive business information and/or trade secrets from disclosure:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Stout*, 298 F.R.D. at 535. Finally, courts must balance the needs of the party seeking the information against the potential for harm resulting from disclosure. *Id.*

## III. DISCUSSION

The parties have been unable to resolve the following disputes: 1) the scope of the AEO designation; 2) the designation of one representative for each party that can review AEO material; 3) interposing a third-party recipe expert; and 4) the process for resolving disputes over AEO designations. (*See* Docs. 35, 36).

### A. Scope of AEO Designation

The parties dispute both the appropriate material that should be eligible for AEO protection and treatment of commonly known information.

#### 1. Material that may be designated AEO

Defendants propose that a party should be able to designate a document AOE if "the party determines that disclosure to non-attorneys is substantially likely to cause injury to such producing party." (Doc. 35 at 5 (internal quotations omitted)). Plaintiffs argue that the parties should only be able to designate material AEO that could cause competitive injury. (Doc. 36 at 2). Plaintiff's proposed scope of AEO designations more closely comports with the practice in this District. *E 3 Biofuels, LLC v. Biothane Corp.*, 2013 U.S. Dist. LEXIS 100793, at *8 (S.D. Ohio July 18, 2013) ("This Court has routinely approved proposed protective orders seeking to protect . . . highly confidential/attorney eyes only material when, in addition to trade secret or other confidential research, development, or commercial information, particularly sensitive information of a similar nature may be disclosed through discovery and would cause competitive harm if publicly revealed.") (internal quotations omitted).

Plaintiff proposes that to designate material AEO, it must fall in the following categories: (1) technical information related to each party's products; (2) research and development work; (3) confidential pricing information; (4) contracts with suppliers and manufacturers; (5) sales information, including contracts with customers; (6) marketing and strategic business information; and (7) company financial information. (Doc. 36 at 2–3). While the proposed categories appear to cover a significant amount of material that could meet the AEO designation, the Court finds that Plaintiff has not shown a need to limit AEO designations to specific categories. At this time, the

proposed categories are a premature limitation of AEO designations as the Court cannot predict the materials that will be designated.

Instead, upon examination of relevant caselaw, the Court limits AEO designations to the following:

> **A party may designate as "ATTORNEYS' EYES ONLY" such materials as it**:
>
> (1) reasonably and in good faith believes to contain particularly sensitive information relating to research for and production of products; technical, business, and research information regarding future products; non-public and highly sensitive financial information; marketing and sales information, such as marketing plans and forecasts, customer lists, pricing data, cost data, customer orders, and customer quotations; and such other documents, information, or materials that relate to other proprietary information; and
>
> (2) reasonably and in good faith believes that public reveal of the information would cause competitive injury to the producing party.

*See e.g. E 3 Biofuels, LLC*, 2013 U.S. Dist. LEXIS 100793, at *9; *Stout*, 298 F.R.D. at 535; *Daugherty*, 2013 U.S. Dist. LEXIS 89683, at *6.

Limiting the scope of AEO to the foregoing sufficiently guards against the indiscriminate use of AEO designations and allows the parties to protect materials that would cause competitive injury if revealed.

### 2. Commonly known information

In its reply, Plaintiff clarified that it did not seek the ability to unilaterally designate AEO material "commonly known information," thereby removing Defendant's AEO designation. (Doc. 36 at 5). Instead, Plaintiff "proposes that commonly known information should not maintain its AEO designation, meaning the designating party must show good cause why counsel and client should be precluded from discussing something both the producing and receiving party already know." (*Id.*). The Court finds that any "commonly known information" is precluded from AEO

designation by the abovementioned scope of such designations; therefore, no further mechanism or provision is required. If a dispute arises regarding "commonly known information," the parties may pursue removal of that AEO designation as is available for any disputed designation.

### B. Designation of Representatives To Review AEO Material

Plaintiff proposes the following: "[a]llow a single representative to view AEO material, thereby promoting free discourse between attorney and client, and the informed litigation and settlement strategies that necessarily result form such communication." (Doc. 36 at 6). Defendants agree that "in the context of resolving a dispute about a particular attorneys' eyes only designation, one of the alternatives available to the Court (assuming an appropriate showing had been made) would be authorizing disclosure to an identified employee . . . ." (Doc. 35 at 4). The Court recalls that the discussion at the pretrial conference more closely resembles Defendants' briefing.

In support of its proposition, Plaintiff cites *Arvco Container Corp. v. Weyerhaeuser Co.*, 2009 U.S. Dist. LEXIS 9264, at *15–16 (W.D. Mich. Feb. 9, 2009). In that case, the court found that although AEO designations are justifiable in some circumstances, they "must be supported by a showing that disclosure will work a clearly defined and serious injury to the party seeking extraordinary confidential treatment." *Id.* at *16. At issue in that case, however, was the imposition of an AEO provision. *See generally id.* The decision does not discuss exceptions to any such provision and is cited by Plaintiff in support of its narrow, complementary argument that a broad AEO scope can hurt a party's ability to negotiate. *See generally id.* This means Plaintiff offers no authority in support of its position that designated representatives appointed by each party should be able to review all AEO designated material.

The Court finds that a per-dispute mechanism as contemplated by Defendants best balances the parties' interest in efficiently and informedly litigating the case with the interest of keeping

6

sensitive competitive information confidential. Accordingly, the Court denies Plaintiff's proposition that Cheryl's and CKE should be able to designate one representative who can review AEO material, and orders a more nuanced, per-dispute approach:

> **Limited Purpose Party Representatives**. If counsel believes in good faith that it is necessary to disclose any ATTORNEYS' EYES ONLY material to a client representative in order to receive context or information regarding the relevance or meaning of the AEO material—in the interest of efficiently litigating the matter—counsel shall do the following:
> i. Identify a client representative that counsel determines would be able to provide the desired context or information regarding the specific material;
> ii. Ask opposing counsel if they consent to disclosure of the specific ATTORNEYS' EYES ONLY material to the designated client representative. If counsel consents, the designated client representative must sign the "Agreement To Be Bound To Protective Order," attached hereto, before the ATTORNEYS' EYES ONLY material may be disclosed to the client representative.
> iii. If opposing counsel does not consent, counsel shall schedule a status conference with the Court, at which time the Court will determine whether the ATTORNEYS' EYES ONLY material may be disclosed to the identified client representative.

### C. Interposing Third-Party Recipe Expert

Defendants propose that a third party review the parties' recipes to determine whether there is "any truth to Cheryl's" contention that CKE is using the same recipes that Cheryl's uses. (Doc. 35 at 7). Defendants seek this mechanism in order to protect recipes, and rely on *Power Conversion, Inc. v. Saft Am., Inc.*, 1985 U.S. Dist. LEXIS 20217, at *5 (S.D.N.Y. May 1, 1985), to argue that such a mechanism is necessary here. In *Power Conversion, Inc.*, the parties accused one another of misappropriating trade secrets concerning the design and manufacture of lithium batteries. *Id.* at *1. The parties had agreed to a protective order but later found themselves in a protracted discovery dispute regarding the relevance of certain proprietary information. *Id.* at *2. The defendant sought to have an independent expert review each side's lithium technology for relevance; the plaintiff opposed such a procedure. *Id.* The Court ultimately concluded that an

independent expert would be useful in determining relevance and directed the use of such a process. *Id.* at *6 (finding that use of an independent expert was "useful to forestall protracted discovery disputes about relevance"). Thus, the court prevented irrelevant information from being produced to a competitor.

Here, the Court is not confronted with a dispute regarding relevance. To the contrary, the parties appear to agree that recipes are relevant to this litigation. Accordingly, the Court is not addressing the problem that the court in *Power Conversion, Inc.* solved. Stated differently, there is not the concern in this case that proprietary technology, which is irrelevant to the litigation, is going to be produced to a competitor. Moreover, although the Court appreciates Defendants' concern of Plaintiff uncovering secret recipes in the course of discovery, designating the recipes AEO solves the problem at this juncture. Indeed, the Court is not aware of a mechanism by which it could ensure the confidentiality of a third-party recipe expert that is more powerful than counsels' risk of contempt, liability for damages, or disbarment, should an AEO designation be ignored resulting in a disclosure of secret recipes.

As this litigation proceeds, the need for independent analysis of certain recipes might crystalize. At this point, however, Defendants have not shown that the mechanism is necessary for all recipes. And the Court is concerned that use of the process would slow discovery and increase litigation costs. Consequently, Defendants' request for a third-party recipe expert is DENIED at this juncture.

### D. Process for Resolving AEO Designation Disputes

The parties' briefing indicates they request a process for resolving disputes about AEO designations in an expeditious fashion (Doc. 35 at 8; Doc. 36 at 10). The Court finds that the following approach, proposed by Plaintiff in its Reply (Doc. 36-1), is adequate:

**Challenges by a Party to Designation as "ATTORNEYS' EYES ONLY."**
If a party disputes the designation of any material as "ATTORNEYS' EYES ONLY," counsel for the disputing party shall notify counsel for the producing party. No later than five calendar days after receiving that notice, counsel will meet and confer in a good faith effort to resolve the dispute. If the parties are unable to resolve their dispute, the party challenging the designation may file a motion under seal and submit the disputed material for *in camera* review, and the party that made the designation shall file an opposition within five business days thereafter. The Court, at its discretion, will conduct a telephone status conference to resolve the dispute and may grant relief that it deems appropriate.

## IV. CONCLUSION

For the reasons stated, "Attachment 1" to this Order shall be the Protective Order governing discovery in this case.

IT IS SO ORDERED.


Date: March 11, 2019                    /s/ Kimberly A. Jolson
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE