**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CHERYL & CO.,**

        **Plaintiff,**

   v.                                      **Civil Action 2:18-cv-1485
                                                    Judge Edmund A. Sargus, Jr.
                                                    Magistrate Judge Jolson**

**CHERYL L. KRUEGER, et al.,**

        **Defendants.**

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Cheryl & Co.'s ("Cheryl's") Motion to Compel Discovery and to Strike Errata Street. (Doc. 85). For the reasons below, Plaintiff's Motion to Compel is **DENIED**, and Plaintiff's Motion to Strike Errata Sheet is **DENIED without prejudice**. (*Id.*).

**I.    BACKGROUND**

Elsewhere, the Court has summarized the allegations in this case. (*See, e.g.*, Doc. 63 at 1–3). Broadly speaking, Cheryl's alleges that Defendant Cheryl Krueger, the former owner of Cheryl's, founded a new cookie company, CKE Management, LLC ("CKE"), to compete with Cheryl's. To perpetrate the scheme, CKE recruited Cheryl's talent in breach of Cheryl's employees' noncompete agreements so that CKE could sell lookalike (and taste-alike) cookies. (*See generally* Doc. 1).

Cheryl's used the deposition of Benjamin Alesi, CKE's Chief Financial Officer and 30(b)(6) witness, to learn about the noncompete agreements. During his deposition, Mr. Alesi answered questions about CKE's hiring of Cheryl's then-employee, Defendant Amy Coley-Tonti. (*See generally* Doc. 85-1). Specifically, he testified that CKE's then-counsel, Taft Stettinius &

Hollister LLP ("Taft") advised CKE about Ms. Coley-Tonti's noncompete agreement with Cheryl's, (*See id*. at 44–46), but that he did not know the substance of these communications, (*id*., at 48–51). At one point in the deposition, counsel for Cheryl's asked Mr. Alesi whether CKE disclosed Taft's legal advice with Ms. Coley-Tonti, to which he answered, "yes." (*Id*., 46:14–18). Yet, later in the deposition, Mr. Alesi testified that he did not know whether this disclosure had occurred. (*See id.*, 48:5–8, 49:12–17).

Based on Mr. Alesi's testimony, Cheryl's requested documents relating to Taft's legal advice concerning the noncompete agreements, asserting that CKE waived any applicable privilege when it shared privileged communications with Ms. Coley-Tonti. (Doc. 85-2, ¶ 2). CKE objected on the basis of the attorney-client privilege or work product doctrine. (Doc. 85-2 at 4– 5). CKE also supplemented its privilege log, adding a January 2018 "legal memorandum re noncompete" drafted by a Taft attorney ("the Taft Memo"). (Doc. 85-2 at 6). The next day, CKE issued an errata sheet for Mr. Alesi's testimony, explaining that Mr. Alesi had misunderstood the questions and did not know whether CKE disclosed Taft's legal advice to Ms. Coley-Tonti. (Doc. 85-2 at 7; *see also* Doc. 85-2 at 13–14). Cheryl's requested that CKE withdraw the errata sheet. CKE refused, explaining that, "[w]hen read in full context, it is apparent that Mr. Alesi misunderstood your initial questions about whether CKE provided any information to Ms. Tonti that it received from the Taft firm." (*Id*. at 13).

Consequently, Cheryl's moved to compel the production of documents and communications exchanged between CKE and Taft concerning Cheryl's non-compete agreements and moved to strike Mr. Alesi's errata sheet. (Doc. 85). The matter is briefed and ripe for resolution. (*See* Docs. 85, 91, 100).

## II. STANDARD

Determining the proper scope of discovery falls within the broad discretion of the trial court. *See Lewis v. ACD Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Moreover, Rule 37 of the Federal Rules of Civil Procedure allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3).

Because this case is before the Court on federal question jurisdiction, federal law governs questions regarding the attorney-client privilege or work product protection. *Talismanic Properties, LLC v. Tipp City, Ohio*, 309 F. Supp. 3d 488, 493 (S.D. Ohio 2017) (citing *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992)). The party withholding discovery bears the burden to establish privilege or work product. *New Phoenix Sunrise Corp. v. C.I.R.*, 408 F. App'x 908, 918 (6th Cir. 2010). Information is protected by the attorney-client privilege:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8), unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998). "The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process. *Talismanic Properties, LLC*, 309 F. Supp. 3d at 493.

Further, Rule 502 of the Federal Rules of Evidence governs waiver of privilege. Generally, federal courts in this Circuit require the proponent of the privilege to carry the burden of showing

nonwaiver as an element of attorney-client privilege. *See In re VisionAmerica, Inc. Sec. Litig.*, No. 02-MC-033 D/V, 2002 WL 31870559, at *1–2 (W.D. Tenn. Dec. 18, 2002) (collecting cases and noting that the Sixth Circuit has favorably cited cases holding that the party claiming privilege must also show nonwaiver). Some district courts, however, have adopted a burden-shifting approach to waiver. *See, e.g.*, *Burkhead & Scott, Inc. v. City of Hopkinsville*, No. 5:12-CV-198-GNS, 2014 WL 7335173, at *1 (W.D. Ky. Dec. 19, 2014) (applying burden-shifting approach and noting that, "[p]roving privilege has not been waived would require proving a negative"); *Shumaker, Loop & Kendrick, LLP v. Zaremba*, 403 B.R. 480, 484 (N.D. Ohio 2009) (holding that once the proponent of the privilege establishes privilege, the burden shifts to the objecting party to "present sufficient evidence upon which a reasonable person may find that the privilege has been waived," and then back to the privilege-holder to "disprove each demonstrated claim of waiver by a preponderance of the evidence").

When deciding whether to apply waiver, "[c]ourts examine whether there has been disclosure of a significant part of a privileged communication to determine if the privilege, in fact, has been waived." *Yarberry v. Gregg Appliances, Inc.*, No. 1:12-CV-611, 2013 WL 4476681, at *3 (S.D. Ohio Aug. 19, 2013) (quotation marks and citations omitted). If the court concludes that privilege has been waived, it then must determine the scope of that waiver. *Id*.

### III. DISCUSSION

To begin, the Court notes that Cheryl's does not challenge CKE's claim of attorney-client privilege. Rather, it asserts that CKE waived the privilege. (Doc. 85 at 12–13). It is unclear, however, whether Cheryl's is arguing that CKE waived privilege when it purportedly disclosed privileged communications to Ms. Coley-Tonti, or, alternatively, that Mr. Alesi waived privilege on behalf of CKE when he testified about privileged communications. (*See, e.g.*, Doc. 85 at 12

(asserting third-party waiver); Doc. 85-2 (asserting, in document request, "that CKE waived any privilege that may have applied . . . when CKE's duly authorized representative, Benjamin Alesi, testified that [Taft] and CKE communicated about Ms. Tonti's noncompete agreement, and that CKE relayed what [Taft] told [ ] CKE to Ms. Tonti")). The Court addresses both assertions.

### A. Third-Party Waiver

First, to the extent that Cheryl's argues that CKE waived privilege when it disclosed Taft's communications to Ms. Coley-Tonti, the Court notes one critical problem: there is nothing decisive on the record establishing that such disclosure occurred.

Cheryl's relies on the following testimony to assert waiver:

Q. Without revealing any details, did Taft and CKE communicate about Ms. Tonti's noncompete?

Mr. Mead: You can say yes or no.

The Witness: Yes.

Q. Did you relay—whatever it is the Taft law firm told to CKE, did CKE tell any of that to Ms. Tonti?

A. Yes.

\* \* \*

Q. Just so I understand, so I can figure out how to go forward, it's your - - you have personal knowledge of the fact that Taft provided certain information, to CKE about Ms. Tonti's noncompete agreement, and CKE shared some of that information with Ms. Tonti; is that correct?

A. That is correct.

(Doc. 85-1, 46:9–17; 47:15–21).

While Cheryl's hangs its hat on the above testimony, CKE urges the Court to view the transcripts as a whole rather than in a vacuum. It contends that Mr. Alesi was confused by the questions, emphasizing that he later testified that did not know whether CKE disclosed legal advice

to Ms. Coley-Tonti. (Doc. 91 at 2–3). Indeed, after seemingly recognizing potential waiver, counsel for Cheryl's pressed the matter:

> Q. All right. How do you know that CKE provided some information that Taft told to it to Ms. Tonti?
>
> A. I don't know.
>
> Q. But you do, you know, but you don't remember now?
>
> A. My role was to put together the offer letter and to interview her. So I know she accepted the offer, but I don't know what that communication looked like.
>
> Q. Do you know if the communication to Ms. Tonti about Taft's legal advice to CKE was in a memo?
>
> Mr. Mead: I'm sorry, could you read that back?
>
> (Question read back.)
>
> The Witness: I don't know.
>
> Q. Do you know if it was in an email?
>
> A. I don't know.
>
> Q. Do you know if it was verbal?
>
> A. I have no idea for that, either.
>
> Q. What do you know about - - what do you know about CKE relaying legal advice it received from Taft to Ms. Tonti?
>
> Mr. Mead: Object to characterization of prior testimony.
>
> The Witness: All I know is Taft received this, and then Amy accepted the offer letter.
>
> Mr. Palmer: But you do know that CKE provided some of the legal advice that Taft had given to it down to Ms. Tonti?
>
> Mr. Mead: Object to form.
>
> The Witness: I don't know.

(Doc. 85-1, 48:5–49: 16).

CKE asserts that, when read in context, these transcripts show that Mr. Alesi "misunderstood the initial questions he was asked on the subject" and "that Mr. Alesi was interpreting the very fact of Ms. Tonti's hiring as tantamount to CKE relaying information its legal counsel had provided to CKE." (Doc. 91 at 3). Without surmising Mr. Alesi's thought processes, the Court finds that, at best for Cheryl's argument, Mr. Alesi did not know the substance of the purported disclosure, and, at worst for the argument, he did not know whether such disclosure occurred at all. That is not enough to establish waiver. At base, the Court cannot rely on Mr. Alesi's vague and inconsistent testimony to compel CKE to disclose Taft's communications regarding Cheryl's noncompete agreements. *See Liang*, 2015 WL 8958884, at *5 (noting that courts must "'make prudential distinctions between what was disclosed and what remains privileged'") (quoting *In re Grand Jury Proceedings*, 78 F.3d at 255–56); *Yarberry*, 2013 WL 4476681, at *3 (requiring courts to determine whether "there has been a disclosure of a significant part of a privileged communication").

In further support of nonwaiver, CKE relies on Ms. Coley-Tonti's deposition. (*Id*. at 4–5). She testified, roughly one month after Mr. Alesi's deposition, that CKE never communicated with her about her noncompete agreement:

> Q. Did you ever receive any feedback from Mr. Alesi or anyone else at CKE about your noncompete agreement?
>
> A. No, I did not.
>
> Q. You never spoke with anyone at CKE about your noncompete agreement after you gave a copy to Mr. Alesi?
>
> A. No, I did not.
>
> Q. Did anyone at CKE ever communicate with you in any form regarding your noncompete agreement?

7

A. No, they did not.

Q. Just so I understand, did you ever mention your noncompete agreement again with anyone who works for CKE?

A. No. I gave them my noncompete and that was it.

* * *

Mr. Palmer: . . . Now, obviously Mr. Meade and his firm are representing you in this case. Have you ever communicated with anyone employed by the Taft law firm regarding your noncompete agreement?

A. No, I have not.

Q. Has CKE ever forwarded any communications from Taft to you?

A. No, they have not.

(Doc. 91-2, 181:11–183:3).

While Cheryl's responds that Ms. Coley-Tonti's testimony is unreliable, (*see* Doc. 100 at 8), it does not squarely respond to CKE's arguments that Mr. Alesi misunderstood the questions or that CKE never disclosed Taft's communications. Rather, it returns to familiar territory by relying on Mr. Alesi's testimony. (*See, e.g.*, Doc. 100 at 6–7 (stating that privilege was waived because Mr. Alesi testified that CKE shared Taft's legal communications with Ms. Coley-Tonti)). But, as explained, Mr. Alesi's vague and inconsistent testimony does not establish waiver.

In sum, the Court finds that CKE has carried its burden to show nonwaiver, and the Court will not compel privileged communications based on Mr. Alesi's testimony.

**B. Deposition Testimony**

Next, to the extent that Cheryl's is contending that Mr. Alesi waived privilege on behalf of CKE, that argument also falls short. Assuming that Mr. Alesi, as CKE's Chief Financial Officer and 30(b)(6) witness had authority to waive CKE's privilege, "[c]ourts have perceived a difference

8

between an opaque reference to an attorney's advice and disclosure that illuminates the facts and analysis underlying that advice." *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 346 (N.D. Ohio 1999) (collecting cases).

In the deposition context, "simply identifying the general subject matter of the communication will not serve to waive the attorney-client privilege." *Liang*, 2015 WL 895884, at *6. Rather, waiver applies where the client "expressly testified about the substance of [the] communication" with counsel and where that testimony revealed counsel's "strategy and reasoning." *See id*. at *7. But that did not occur here. Mr. Alesi could not answer basic questions about the purported disclosure, and further testified that he did not know whether it occurred at all. Accordingly, his testimony contains, at most, "an opaque reference to an attorney's advice." *Libbey Glass, Inc.*, 197 F.R.D at 346. This is not enough to support a finding of waiver.

Finally, Cheryl's—for the first time in reply—asks the Court to review the documents *in camera* or hold an evidentiary hearing. (Doc. 100 at 9–10). A party moving for *in camera* inspection "must make a factual showing adequate to support a good faith belief that the review will uncover unprivileged documents." *Shah v. Metro. Life Ins. Co.*, No. 2:16-CV-1124, 2017 WL 5149145, at *2 (S.D. Ohio Oct. 19, 2017) (quotation marks and citation omitted). Here, Cheryl's does not argue that there is a good faith basis that *in camera* review would uncover unprivileged documents; rather, it asserts that, because of Mr. Alesi's waiver, "[t]here is no longer any privilege associated with those documents." (Doc. 100 at 10). But the Court has already concluded that Mr. Alesi's testimony does not support a finding of waiver, and an *in camera* inspection would serve no purpose here. This is additionally true because the Court does not need to reach the question of whether work-product protection applies because attorney-client privilege protects the Taft Memo from disclosure.

9

As for Cheryl's request for an evidentiary hearing "on the relevance of" the withheld documents, the potential import of the Taft Memo or related documents does not seem to be in dispute. Further, under the Federal Rules of Civil Procedure, Cheryl's is entitled to discover only relevant and nonprivileged information. Because the Court has already determined that privilege remains intact, an evidentiary hearing is not needed, and Cheryl's request is denied.

## C. Errata Sheet

The Court turns now to Cheryl's request that the Court strike certain entries from CKE's errata sheet. (Doc. 85 at 10–12).

"Under Federal Rule of Civil Procedure 12(f), the court 'may strike from a pleading an insufficient defense or any redundant immaterial, impertinent, or scandalous matter.'" *Mullins v. Cyranek*, No. 1:12CV384, 2014 WL 3573498, at *2 (S.D. Ohio July 21, 2014) (quoting Fed. R. Civ. P. 12(f)). But because an errata sheet is not a "pleading," that Rule is "inapplicable." *Id*. "The Court, however, may consider the motion as an invitation to disregard the changes to the errata sheet in ruling on summary judgment." *Id*. Accordingly, case posture matters here, and courts generally consider a motion to disregard an errata sheet at summary judgment, when considering the factual record. *See, e.g.*, *Tchankpa v. Ascena Retail Grp., Inc.*, No. 2:16-CV-895, 2018 WL 1472527, at *3 (S.D. Ohio Mar. 26, 2018) (ruling on motion to strike errata sheet and holding that it would consider certain errata changes when ruling on summary judgment); *Mullins v. Cyranek*, No. 1:12CV384, 2014 WL 3573498, at *3 (S.D. Ohio July 21, 2014) ("In ruling on Defendant's motion for summary judgment, the Court will not disregard the fourth alteration but will disregard all other portions of the errata sheet identified above pursuant to Rule 30(e).").

In light of this case law, the Undersigned finds that the best approach is for the district court judge in this matter to consider Cheryl's concerns regarding CKE's errata sheet if and when

ruling on summary judgment motions. The Undersigned need not reach this issue for purposes of resolving the question of waiver or Cheryl's Motion to Compel. In other words, the Undersigned's answer regarding waiver is the same under either version of Mr. Alesi's deposition. Accordingly, Cheryl's Motion to Strike Errata Sheet (Doc. 85) is **DENIED without prejudice** subject to re-filing.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel is **DENIED**, (Doc. 85) and its Motion to Strike Errata Sheet is **DENIED without prejudice**, (*id*.).

IT IS SO ORDERED.

Date: December 4, 2019 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE