UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHERYL & CO.,**

        **Plaintiff,**

**v.**

**CHERYL L. KRUEGER,** *et al.***,**

        **Defendants.**

**Civil Action 2:18-cv-01485**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

The instant matter is before the Court for consideration of a motion to dismiss filed by Defendant Elisabeth Allwein ("Allwein") (ECF No. 106), as well as a motion to dismiss filed by Plaintiff Cheryl & Co. ("Cheryl Co."). (ECF No. 110).

Allwein moves to dismiss Cheryl Co.'s sole remaining claim against her, which is the civil conspiracy claim alleged in the First Amended Complaint. (ECF No. 106). Cheryl Co. responded to Allwein's motion with a memorandum in opposition (ECF No. 111), and Allwein has replied. (ECF No. 127).

Cheryl Co. moves to dismiss Defendant CKE Management, LLC's ("CKE") Amended Counterclaim in its entirety. (ECF No. 110). CKE filed a response in opposition (ECF No. 128), and Cheryl Co. has replied. (ECF No. 131).

These matters are ripe for review. For the reasons that follow, Allwein's Motion to Dismiss is **GRANTED** (ECF No. 106), and Cheryl Co.'s Motion to Dismiss is **GRANTED**. (ECF No. 110).

1

**I**

**A. Cheryl Co.'s Complaint**

In 1981, Defendant Cheryl L. Krueger ("Kreuger") founded Cheryl Co., an Ohio corporation that is now a leading seller of cookies and other baked goods. (ECF No. 104 at ¶ 1, 11). Cheryl Co. is best known for its buttercream frosted cookies, which are depicted below:



(*Id.* at ¶ 14). After managing Cheryl Co. for several years, Krueger sold the company in 2005 for $40 million. (*Id.* at ¶ 10, 11). In August of 2017, Krueger formed C. Krueger Finest Baked Goods, which competes against Cheryl Co. in the business of selling baked goods. (*Id.* at ¶ 15).

Allwein is a defendant in this action who worked for Cheryl Co. from 1993 to 2018 as the company's Director of Product Development. (*Id.* at ¶ 6, 102, 107, 108). In that role, Allwein worked closely with Defendant T. David Adell ("Adell") to maximize production of Cheryl Co. products. (*Id.* at ¶ 103). Specifically, Allwein and Adell developed customized machinery that applied Cheryl Co.'s signature swirl frosting to cookies. (*Id.* at ¶ 26, 103).

Adell joined Cheryl Co. in 1987 and was promoted to Director of Food Production several years later. (*Id.* at ¶ 51, 52). While working for Cheryl Co., Adell eventually acquired a position as Cheryl Co.'s Director of Food Production, and he also obtained an ownership interest in the company. (*Id.* at ¶ 52). Through these endeavors, Adell developed a knowledge of the company's

production methods and processes, which included training with Cheryl Co's baking equipment. (*Id.* at ¶ 54).

Adell resigned from Cheryl Co. on May 31, 2018 and he joined CKE sometime later. (*Id.* at ¶ 65 & 66). But, before his departure, Adell allegedly helped CKE secure production equipment to compete with Cheryl Co.. (*Id.*). For these reasons, the Amended Complaint alleges that Adell breached his duty of loyalty to Cheryl Co.. (*Id.* at ¶ 179). The Amended Complaint also accuses Allwein of conspiring with Adell to breach his duty of loyalty to Cheryl Co.. (*Id.* at ¶ 185).

Based on these assertions, Cheryl Co. initiated this action on November 11, 2018 with a Complaint, which asserted claims against Krueger, CKE, Adell and Allwein, as well as claims against Amy Coley and Cindy Dalton, who are former Cheryl Co. employees. (*See* ECF No. 1). Cheryl Co. amended its Complaint on December 12, 2019. (ECF No. 104). The Amended Complaint alleges, in relevant part, a civil conspiracy claim against Allwein. (*Id.* at ¶ 181-189). Allwein now seeks dismissal of Cheryl Co.'s civil conspiracy claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 106).

### B. CKE's Counterclaim

CKE filed a counterclaim against Cheryl Co. on December 11, 2018. (ECF No. 13). CKE then amended its Counterclaim a year later on December 26, 2019. (ECF No. 107). CKE's Amended Counterclaim contains a myriad of allegations, which, at bottom, advance an Ohio common law unfair competition counterclaim against Cheryl Co.. (CKE Counterclaim at ¶ 1, ECF No. 107). CKE's counterclaim is founded on the belief that Cheryl Co. filed a baseless lawsuit against CKE for the sole purpose of injuring CKE's ability to pursue a competitive business. (*Id.*). The Amended Counterclaim highlights several claims in Cheryl Co.'s Amended Complaint, which

CKE alleges are "assertions for which Cheryl's cannot possibly believe in good faith it has any chance of proving." (*Id.* at ¶ 15).

For example, CKE asserts in its Amended Counterclaim that Cheryl Co.'s trade dress claims are baseless given that Cheryl Co. does not possess a trade dress in selling cookies with swirl icing. (*Id.* at ¶ 16-20). Similarly, the Amended Counterclaim alleges that Cheryl Co. does not have an actionable claim based on CKE's use of clear plastic wrapping for cookies given that the individual clear plastic wrapping technique is largely used throughout the cookie industry. (*Id.* at ¶ 21-22).

CKE also alleges that Cheryl Co. is asserting claims based on non-compete agreements that do not exist. (*Id.* at ¶ 23-30). Specifically, the Amended Counterclaim asserts that neither Allwein nor Dalton signed a non-compete agreement with Cheryl Co.. (*Id.* at ¶ 23-30). CKE also asserts that Cheryl Co. falsely alleged that CKE is using its secret recipes, when the ingredients list on CKE's packaging demonstrates that CKE is using neither the same recipes, nor the same ingredients. (*Id.* at ¶ 31-32).

CKE further points out that the Amended Complaint claims CKE and Krueger tortiously interfered with a non-compete agreement that Dalton allegedly signed back in 1989; yet, CKE asserts in its Amended Counterclaim that Dalton never executed such an agreement, and that neither CKE nor Krueger knew about the alleged existence of any such agreement until April of 2019. (*Id.* at ¶ 33-35). CKE also highlights that the Amended Complaint alleges Coley misappropriated Cheryl Co.'s trade secrets when she sent a calendar template to herself; yet, according to CKE, there was nothing proprietary about the calendar given that it contains contents similar to "just about any calendar." (*Id.* at ¶ 36-37).

Additionally, CKE asserts that there is no basis for Cheryl Co.'s claim that Defendant's misappropriated the company's icing technique because Cheryl Co. commissioned a video displaying the techniques, which can be viewed on Youtube or in Cheryl Co.'s flagship retail store. (*Id.* at ¶ 38-39).

Based on these assertions, CKE claims that Cheryl Co. does not expect to win this lawsuit given that its claims are baseless. (*Id.* at ¶ 40, 42). Instead, CKE alleges that Cheryl Co. "commenced and prosecuted this litigation to harass, annoy, intimidate, financially harm, or gain an unfair advantage over CKE." (*Id.* at ¶ 41). According to CKE, these circumstances "constitute[] unfair competition under the common law of the State of Ohio." (*Id.*). Cheryl Co. moves to dismiss CKE's Amended Counterclaim under Rule 12(b)(6). (ECF No. 110).

**II**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a claim for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) challenge, a pleading must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*). A claim is plausible when the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. In making this determination, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Brickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The

5

Court "need not, however, accept conclusory allegations or conclusions of law dressed up as facts." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012).

## III

### A. Cheryl Co.'s Civil Conspiracy Claim

The question here is whether Cheryl Co.'s has pleaded its civil conspiracy claim such that it can survive Allwein's Rule 12(b)(6) challenge. Allwein argues that Cheryl Co.'s civil conspiracy claim is deficient because the First Amended Complaint alleges nothing more than threadbare recitals of legal elements. (ECF No. 106 at 3). Specifically, Allwein contends that Cheryl Co. "offers no factual content with respect to its civil conspiracy claim." (*Id.*). According to Allwein, Cheryl Co. asserts, instead, that "Allwein conspired with Mr. Adell to breach his duty of loyalty" and that it "incurred some unspecified damages as a result of this conspiracy." (*Id.* at 3-4). In doing so, Allwein argues that the First Amended Complaint requires the Court to "guess as to what [] Allwein supposedly did and how it supposedly impacted [Chery Co.]." (*Id.* at 4). For all of these reasons, Allwein contends that Cheryl Co.'s civil conspiracy claim should be dismissed for failure to state a claim. (*Id.* at 5).

Cheryl Co. pushes back against Allwein's Motion to Dismiss, arguing that its civil conspiracy claim should survive Allwein's Rule 12(b)(6) challenge. (ECF No. 111 at 1). In particular, Cheryl Co. argues that its civil conspiracy claim satisfies the liberal pleading standard of Rule 12(b)(6) and Rule 8(a). (*Id.* at 3-4). In support of its position, Cheryl Co. highlights certain allegations in the First Amended Complaint, as well as certain confidential documents in the record, which, in Cheryl Co.'s opinion, show how Allwein and Adell conspired to compete with Cheryl Co.. (*Id.* at 1).

      a. *Rule 8(a)*

Cheryl Co. contends that its civil conspiracy claim has been pled with specificity as required under Rule 8(a). "Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a 'short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Gascho v. Global Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 717 (S.D. Ohio Jan. 16, 2013). "The moving party is entitled to relief only when the complaint fails to meet this liberal standard." *Brown v. Fla. Coastal Partners, LLC*, Case No. 2:13-cv-1225, 2014 U.S. Dist. LEXIS 145679, at *6 (S.D. Ohio Oct. 10, 2014).

"On the other hand, more than bare assertions of legal conclusions are required to satisfy the notice pleading standard*.*" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). "With regard to pleading a civil conspiracy claim in Ohio, the same 'must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim.'" *Spears v. Chrysler, LLC*, Case No. 3:08CV331, 2011 U.S. Dist. LEXIS 12014, at *33-34 (S.D. Ohio Feb. 8, 2011) (citing *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984)).

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). To establish a claim for civil conspiracy, a plaintiff must establish: "(1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy." *Fulmer v. Myers*, Case No.: 2:16-CV-79, 2016 U.S. Dist. LEXIS 105605, at *11-13 (S.D. Ohio Aug. 10, 2016) (citing *Eva v. Midwest Nat'l Mortg. Banc, Inc*., 143 F. Supp. 2d 862, 898 (N.D. Ohio 2011)).

Here, the parties do not dispute whether the second or fourth elements of civil conspiracy are properly pled. Instead, the contention in this matter is over the first and the third. Cheryl Co. Cheryl Co. contends that the following allegations from the Amended Complaint sufficiently state a claim for civil conspiracy against Allwein:

> 102: Ms. Allwein began working for Cheryl's in 1993 and served as its Director of Product Development.
>
> 103: Ms. Allwein worked closely with Mr. Adell on the efficient production of Cheryl's products. One such example of their joint efforts was the development of an automated process for applying the frosting to Cheryl's round cookies with Cheryl's signature swirl.
>
> 26: Indeed, Ms. Allwein and Mr. Adell worked on the same team that refined the customized machinery used to apply frosting to Cheryl's' round cookies in the swirl pattern.
>
> 107: Ms. Allwein's last day of employment with Cheryl's was March 2, 2018.
>
> 108: Ms. Allwein started working for CKE (a direct competitor of Cheryl's) shortly after she resigned from Cheryl's.
>
> 51, 52: Mr. Adell began working for Cheryl's in 1987, and after many years of service became its Director of Food Production.
>
> 53: As an employee who worked at Cheryl's for decades, including as the Director of Food Production, Mr. Adell knew Cheryl's production methods and processes, and was trained to operate Cheryl's baking equipment.
>
> 56: Mr. Adell resigned his employment with Cheryl's on May 31, 2018.
>
> 66: Before his resignation, and while still employed by Cheryl's, he helped CKE's efforts to secure production equipment to compete against Cheryl's.
> 179: By doing so, Mr. Adell breached his duty of loyalty and acted as a faithless servant.
>
> 182: Ms. Allwein and Mr. Adell formed a malicious combination to commit an unlawful act causing injury to Cheryl's.
>
> 185: That unlawful act, specifically, is Mr. Adell breaching his duty of loyalty by helping CKE's efforts to secure production equipment to compete against Cheryl's.
>
> 187. As a direct and proximate result of their conspiracy, Cheryl's has suffered damages.

(*Id.* at 2-3). Relative to Allwein, these allegations are nothing more than bare legal conclusions that are unsupported by material facts. They, therefore, fall short of the specificity that is required

to plead a claim for civil conspiracy, even under the liberal pleading standard required under Rule 8(a). *Spears, LLC*, 2011 U.S. Dist. LEXIS 12014, at *33-34.

Aside from the allegations outlined above, Cheryl Co. urges the Court to consider additional facts in the record, which, in Cheryl Co.'s opinion, demonstrate that Allwein and Adell conspired to inappropriately compete against Cheryl Co. Specifically, Cheryl Co. argues that: (i) Adell has not moved to dismiss the claim against him for breach of loyalty which confirms the existence of an unlawful act independent from the actual conspiracy; (ii) Allwein admitted in her response to Cheryl Co.'s motion to amend that she conspired with Adell to help CKE compete against Cheryl Co.; and (iii) Allwein and Adell produced a series of documents that show they worked together to further CKE's efforts to obtain production equipment to be used to compete against Cheryl Co.. (ECF No. 111 at 1, 5).

First, whether Adell has moved to dismiss the claim against him for breach of loyalty, at best, addresses only the third and fourth element necessary to plead a civil conspiracy claim. It has no bearing on whether Cheryl Co. alleged material facts concerning the first. Second, Cheryl Co. misconstrues Allwein's response to its motion to amend. The relevant text from Allwein's response memorandum is as follows:

> Plaintiff added a new theory (beyond the new claims Plaintiff proposed in its August motion for leave) and asserts a single claim against Defendant Allwein in the proposed amended complaint claiming that Defendant Allwein engaged in a civil conspiracy with Defendant David Adell relating to Mr. Adell providing publicly available information to Ms. Allwein about equipment that CKE never ended up purchasing.

(ECF No. 93 at 4). Thus, the statement that Cheryl Co. highlights is not an admission of civil conspiracy; it is simply Allwein's summarization of Cheryl Co.'s own claim. Finally, Cheryl Co. references confidential documents that supposedly reveal the details of Allwein's alleged conspiracy with Adell; yet, Cheryl Co. does not cite to any of these documents to support its

position. For these reasons, the Court is not persuaded that Cheryl Co. has adequately pled its civil conspiracy claim. Dismissal of the civil conspiracy claim is, therefore, appropriate.

### B. Defendant CKE's Counterclaim

Cheryl Co. argues that this Court should dismiss CKE's counterclaim, which is predicated on the Ohio common law doctrine of unfair competition. (ECF No. 110 at 3). CKE brings its counterclaim under the belief that Cheryl Co. initiated this action for an improper purpose, which is to harm CKE's business by forcing the company to spend time and resources on its defense in this matter. (*See generally* ECF No. 107). Cheryl Co. argues that CKE's counterclaim should be dismissed because in *Ashley Furniture Indus. v. Am. Signature, Inc.* this Court concluded that an Ohio common law unfair competition claim, allegedly identical to the one asserted here, was preempted by federal law. (ECF No. 110 at 7-10) (citing *Ashley Furniture Indus. v. Am. Signature, Inc.*, Case No. 2:11-cv-427, 2015 U.S. Dist. LEXIS 194690, *9-17 (S.D. Ohio Mar. 12, 2015)). Cheryl Co. also asserts that it is immune from CKE's unfair competition counterclaim in light of the *Noerr-Pennington* Doctrine, which protects litigants who seek a court's assistance in redressing wrongful conduct. (*Id.* at 13-18). Finally, Cheryl Co. contends that CKE's unfair competition counterclaim is implausible given that CKE has admitted to several material facts, which support Cheryl Co.'s claims and bar any assertion that Cheryl Co. brought this action for an improper purpose. (*Id.* at 19-21).

CKE pushes back, arguing that "[b]oth the drafters of Rule 11 and Congress agreed that Rule 11 does not preempt state law torts relating to litigation misconduct." (ECF No. 128 at 8). To support its position, CKE highlights certain Advisory Committee Notes that indicate Rule 11 was not intended to abrogate a party's ability to bring an independent action for malicious prosecution or abuse of process. (*Id.* at 9). CKE also claims that some courts have refused to use the sanctions

in Rule 11 as a substitute for tort damages and have likewise rejected the argument that Rule 11 preempts such torts. (*Id.* at 9-10). In addition, CKE avers that the cases in Cheryl Co.'s brief concern the preemption of state statutes, which is not applicable here given that this case concerns common law claims. (*Id.* at 11-12). CKE also asserts that Cheryl Co. is not entitled to immunity under the *Noerr-Pennington* Doctrine. (*Id.* at 12-17). According to CKE, even if the *Noerr-Pennington* Doctrine were applicable, the claims in this case survive under the sham litigation exception to the doctrine because CKE has demonstrated that at least some of Cheryl Co.'s claims are objectively baseless. (*Id.*). To support its position, CKE relies on *Buffalo Wild Wings, Inc. v. BW-3 of Akron, Inc.*, 763 F.App'x 558 (6th Cir. 2019), as well as *Intel Corp. v. Via Technologies, Inc.*, Case No. C 99-03062 WHA, 2001 U.S. Dist. LEXIS 27157, at *15-16 (N.D.Cal. Mar. 20, 2001), *Avnet, Inc. v. Motio, Inc.*, Case No. 12 C 2100, 2015 U.S. Dist. LEXIS 120449, at *18-19 (N.D.Ill. Sept. 9, 2015) and *Med. Mut. of Ohio, Inc. v. GlaxoSmithKline PLC* (*In re Wellbutrin SR Antitrust Litigation*), 749 F.Supp.2d 260, 262 (E.D.Pa. Aug. 31, 2010). (*Id.* at 12-16). Finally, CKE argues that its unfair competition counterclaim is plausible based on the allegations presented in the Amended Counterclaim, and that CKE has not admitted to any facts that would undermine its claim. (*Id.* at 17-20). The Court disagrees.

    a. Preemption

"In general, a federal law may preempt a state law in any of the following three scenarios. First, a federal statute may expressly preempt the state law. Second, a federal law may impliedly preempt a state law. Third, preemption results from an actual conflict between a federal and a state law." *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 965 (6th Cir. 2004). Cheryl Co. predicates its motion to dismiss on the third type of preemption, which is known as conflict preemption. *See State Farm Bank v. Reardon,* 539 F.3d 336, 342 (6th Cir. 2008).

Conflict preemption arises in circumstances "where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *State Farm Bank v. Reardon*, 539 F.3d 336, 342 (6th Cir. 2008). A court's conflict preemption analysis "should be narrow and precise, 'to prevent the diminution of the role Congress reserved to the States while at the same time preserving the federal role.'" *Downhour v. Somani*, 85 F.3d 261, 266 (6th Cir. 1996).

As Cheryl Co. correctly highlights, this Court determined in *Ashley Furniture Indus. v. Am. Signature, Inc.* that Ohio common law claims for unfair competition, similar to those presented here, are preempted by Federal Rule of Civil Procedure 11. *Ashley Furniture Indus. v. Am. Signature, Inc.,* Case No. 2:11-cv-427, 2015 U.S. Dist. LEXIS 194690, *9-17 (S.D. Ohio Mar. 12, 2015). In *Ashley Furniture Indus.*, a manufacturer and seller of sofas, Ashley Furniture Industries, Inc. ("Ashley"), brought trademark infringement and false advertising claims against Value City, based on allegations that Value City had improperly used Ashley's trademark and copyright in its own advertisements. *Id.* at *2-3. Value City filed an Ohio common law unfair competition counterclaim against Ashley, which "[i]n large part . . . consist[ed] of accusations that Ashley made misrepresentations to this Court." *Id.* at *6.

Ashley moved to dismiss the common law unfair competition claim, arguing primarily that the claim was preempted by federal law. *Id.* at *8-9. Specifically, Ashley maintained that Rule 11 preempted Value City's unfair competition claim given that the conduct underlying the claim occurred in federal court. *Id.* This Court agreed, explaining:

> the Court holds that federal law preempts Value City's common law unfair competition counterclaim. Value City's unfair competition counterclaim consists largely of Ashley's alleged misrepresentations to this Court. Federal Rule of Civil Procedure 11 expressly governs the kind of representations Ashley made to the Court and provides for sanctions in the case of misrepresentations concerning claims or defenses. Fed. R. Civ. P. 11(b)(2). Rule 11 also contains a safe harbor

12

>provision that allows a litigant to withdraw a representation within twenty-one days. Fed. R. Civ. P. 11(c)(1)(A). Ohio common law unfair competition does not contain such a safe harbor provision. It therefore directly conflicts with federal law and is preempted. *First Bank of Marietta v. Hartford Underwriters Ins. Co*., 307 F.3d 501, 529-30 (6th Cir. 2002).

*Id.* at *16-17. As was the case in *Ashely Furniture,* so it is here that CKE's counterclaim is based on the Ohio common law doctrine of unfair competition, and CKE is arguing essentially that its unfair competition counterclaim is meritorious because Cheryl Co. has allegedly made misrepresentations to the Court by asserting baseless claims in its Amended Complaint. In support of its position, CKE points to a plethora of allegations, which, if true, would lend some credence to its position that Cheryl Co. has made misrepresentations to the Court. Yet, even if CKE's allegations were true, which this Court does not decide today, Rule 11 governs exactly the type of conduct that is alleged in CKE's counterclaim.

>Federal Rule of Civil Procedure 11(b) provides, in relevant part, the following:
>
>By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
>(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
>(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .
>
>Here, CKE alleges specifically that Cheryl Co. initiated this action not to prevail on the merits of its claims, but to "harass, annoy, intimidate, financially harm, or gain an unfair advantage over CKE," all of which are improper under Rule 11(b)(1). (ECF No. 107 at ¶ 41).

13

Plaintiff also alleges that its unfair competition counterclaim is supported because Cheryl Co.'s claims have no legal basis. Specifically, CKE alleges that Cheryl Co.'s tortious interference of business claim is baseless because the claim is predicated on a non-compete agreement from 1989 that neither CKE nor Krueger knew about until 2019. (*Id.* at ¶ 33-35). CKE also asserts that Cheryl Co.'s trade secret misappropriation claim is legally baseless given that it is predicated on an allegation that Coley sent herself a calendar, which, in CKE's view, did not contain proprietary information. (*Id.* at ¶ 36-37). In addition, CKE asserts that Cheryl Co.'s trade dress claim lacks a legal basis because Cheryl Co. does not have a trade dress in swirl frosting or individual plastic wrapped cookies. (*Id.* at ¶ 16-22). And, finally, CKE alleges that Defendants could not have misappropriated Cheryl Co.'s trade secret methods for icing cookies because Cheryl Co. has posted videos of its method on Youtube and in its flagship store. (*Id.* at ¶ 38-39). If true, these allegations would establish that Cheryl Co.'s claims are not warranted under existing law, which would be a violation of Rule 11(b)(2).

Additionally, CKE alleges that a multitude of Cheryl Co.'s claims lack evidentiary support. (*Id.* at ¶ 16-39). In particular, CKE emphasizes that Cheryl Co.'s non-compete claims are factually baseless because Cheryl Co. alleges that Allwein and Dalton entered into non-compete agreements, but no such agreements exists. (*Id.* at ¶ 23-26). CKE also asserts that there is no factual basis for Cheryl Co.'s claim that CKE is using the same ingredients and recipes, as evidenced by the ingredients list on CKE's packaging, which, in CKE's view, establishes that CKE is using different recipes and ingredients. (*Id.* at ¶ 27-30). These allegations, if true, would constitute a violation of Rule 11(b)(3).

These circumstances establish that Federal Rule of Civil Procedure 11 expressly governs the kind of allegations that CKE has advanced in this case, and the Court notes that Rule 11 would

provide a remedy for the conduct alleged, if such conduct were eventually proven. *See Ashley Furniture Indus.,* 2015 U.S. Dist. LEXIS 194690, at *16-17; *see also Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996) (noting that, if a party engages in conduct that violates Rule 11(b), then a court may impose sanctions pursuant to Rule 11(c), which are appropriate "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose"). Moreover, while the Rule 11 advisory note advises against the preclusion of independent claims for malicious prosecution, this Court amply explained in *Ashley Furniture Indus*. that Rule 11 contains a safe harbor provision that allows a litigant to withdraw a representation within twenty-one days, which Ohio's unfair competition claim, in particular, does not have. *Ashley Furniture Indus.,* 2015 U.S. Dist. LEXIS 194690, at *16-17. As such, this case is one where "compliance with both federal and state regulations is a physical impossibility." *State Farm Bank v. Reardon*, 539 F.3d 336, 342 (6th Cir. 2008). CKE's Ohio common law unfair competition counterclaim is, therefore, preempted by federal law, and dismissal of the claim is appropriate.

### III

For the reasons set forth above, Allwein's Motion to Dismiss is **GRANTED** (ECF No. 106), and Cheryl Co.'s Motion to Dismiss is **GRANTED**. (ECF No. 110). Accordingly, Cheryl Co.'s civil conspiracy claim against Allwein is **DISMISSED.** (ECF No. 104 at ¶ 181-189). CKE's Amended Counterclaim against Cheryl Co. is also **DISMISSED.** (CKE Amen. Counterclaim, ECF No. 107).

**IT IS SO ORDERED.**

**9/10/2020**                                                        **s/Edmund A. Sargus, Jr.**
**DATE**                                                           **EDMUND A. SARGUS, JR.**
                                                                          **UNITED STATES DISTRICT JUDGE**